Vivian Shevitz
Attorney at Law
46 Truesdale Lake Drive
South Salem, New York 10590
914-763-2122
FAX: 914-763-2322
e-mail: Vivian@shevitzlaw.com

August 8, 2008

Honorable Richard M. Berman
United States District Court
Southern District of New York
40 Centre Street
New York, New York 10007

    Re: <u>EBERHARD v. MARCU,  03 Civ 0813 (RMB)</u>
      <u>And UNITED STATES v. EBERHARD, 08 civ. 5622 (RMB)</u>

Dear Judge Berman:

    I write in connection with our discussion in Court on July 17, 2008, and specifically the court's directive: "Ms. Shevitz, by August 8th, if that is a convenient date, should tell me what you want to have happen in either or both of the cases." (Tr. 53-54). I also supplement my claim for EAJA fees, and ask for fees continuing to date, for the work on this remand as well as on the appeal.

    <u>The Receiver Cannot Proceed</u>:

    The Receiver takes the position that, notwithstanding that the Court of Appeals held that he has no standing because he doesn't represent all the creditors, this Court should rule that the Canadian property is "receivership property" by virtue of the "trial" held prior to the appeal. To the contrary, the Receiver does not have grounds or authority to proceed any further. Any attempt by him or his law firm to take *more* fees for pursuing this matter at this time should be rejected.

First and foremost, the underlying rationale for the appointment of the Receiver was to maintain property for the potential disgorgement to the S.E.C.. There is, however, no disgorgement claim remaining in this case. The Court issued a "final judgment" in favor of the S.E.C., entered January 24, 2008. The "Whereas" Clause of the final judgment states (at page 2): "The Plaintiff, having withdrawn its claims against Eberhard for disgorgement, penalties, and other monetary relief …." Defendants are then permanently enjoined. The only jurisdiction retained by the Court is to "enforc[e] the terms of this Final Judgment" (Final Judgment p.3). (Perhaps assuming that he was going to win the appeal, the S.E.C. Receiver's counsel proposed this final judgment; regardless of the reason, it was issued.) Because there is no longer a claim for disgorgement, penalties, or other monetary relief as against Todd Eberhard, the basis for the Receivership – to safeguard assets for disgorgement – has evaporated. The Court has no jurisdiction over the withdrawn disgorgement claim. *See* Gordon v. Washington, 295 U.S. 30 (1935) (receivership is not an end in itself, but only a means to reach some legitimate end sought through the exercise of the power of a court of equity; no occasion for a court of equity to appoint a receiver of property of which it is asked to make no further disposition); Smith v. Dowden, 47 F.3d 940, 943-944 (8th Cir. 1995) (successful withdrawal of a claim in Bankruptcy Court renders the withdrawn claim a legal nullity and leaves the parties as if the claim had never been brought. In the case at bar, that gave the party a right to a jury trial on the Trustee's fraudulent conveyance action outside of bankruptcy court). Cf. Cherokee Nation of Okla. v. United States, 69 Fed. Cl. 148, 150 (Fed. Cl. 2005) (motion for attorney's fees denied as moot, because law firm had withdrawn its claim for equitable remedies upon which the motion was largely based).

Thus, regardless that the property should not have been held, and should not be held, in the "receivership estate" because it is not Todd Eberhard's property, the Receiver has no legal basis at this time to pursue the property to *put* it in the receivership estate. The Receiver's attempt to insert himself further in these proceedings

(apparently just because he did not prevail in the Court of Appeals) appears an attempt to vindicate his prior baseless and legally improper position and churn more fees for himself when there is no longer any ground for him to proceed.

Indeed, because the Receiver cannot proceed, he wrongfully holds Borderline NS. The Court should Order that he promptly restore the shares to Mrs. Eberhard's name in Canada., and restore the proceeds of the Pye Island sale (which he holds), plus $5000 paid by Mrs. Eberhard on account of the Order giving ownership to the Receiver, to Mrs. Eberhard.

The Receiver Is In Any Event Judicially Estopped:

The Receiver, in any event, is judicially estopped from asserting that Sandi Eberhard is not the owner of Borderline NS (and hence of the Canadian property).

Just a day after the Court of Appeals issued its decision ruling against the Receiver's position, the United States filed a civil complaint seeking the same property (by two different claims, "civil forfeiture" and alleged "fraudulent conveyance" by Todd Eberhard to defeat the now-entered restitution obligation.). In the initial complaint, at paragraph 28, the United States alleges: "On or about June 22, 2002, Todd Eberhard transferred, conveyed and /or delivered to Sandi Eberhard the shares in Borderline NS." In the Amended Complaint, the same assertion is made (see paragraph 32).

This is a judicial admission on the part of the United States that Sandi Eberhard, and not Todd Eberhard, currently owns the property. The S.E.C., of course, is an *agency* of the United States government. Its claim for disgorgement derives from the power of the United States government. Hence, a statement of an agent (attorney) authorized to speak for it – that is, the U.S. Attorney's office – in a judicial complaint, should be conclusive. As the Second Circuit stated in United States v. Yildiz, 355 F.3d 80, 82 (2d Cir. 2004):

This Court has recognized that the government's attorneys can bind the government with their in-court statements, *see* United States v. Salerno, 937 F.2d 797, 810-12 (2d Cir. 1991), *rev'd on other grounds*, 505 U.S. 317 … (1992), and filings, *see* United States v. GAF Corp., 928 F.2d 1253, 1258-62 (2d Cir. 1991).

Given the government's admission in its pleading in this case, the Receiver has no basis to even *claim* that the Canadian properties belong to Todd Eberhard and, therefore, are part of the receivership estate.

Even were the pleading not conclusive, the Receiver would be estopped from asserting a different position from that taken now by the U.S. Government, and any attempt on his part to increase expenses by pursuing such a position would be in bad faith. The doctrine of judicial estoppel would require the Court to reject the Receiver's contrary position. As a matter of equity, the Court should thus not let any such action even begin.

As stated generally in Bradford v. Wiggins, 516 F.3d 1189, 1194 (10th Cir. 2008),

> The doctrine of judicial estoppel is based upon protecting the integrity of the judicial system by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire, 532 U.S. at 749-50 [New Hampshire v. Maine, 532 U.S. 742, 751-753 (U.S. 2001)]. Though there is no precise formula, in order to determine whether to apply judicial estoppel, courts typically inquire as to whether: 1) a party's later position is clearly inconsistent with its earlier position; 2) a party has persuaded a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled"; and 3) the party seeking to assert the inconsistent position would

derive an unfair advantage if not estopped. ….

See also Young v. United States Dep't of Justice, 882 F.2d 633, 640 (2d Cir. 1989).

In New Hampshire v. Maine, 532 U.S. 742, 756, the Supreme Court rejected the notion that the doctrine of estoppel could not be applied against a State.  Though New Hampshire was asserting a different position regarding a property line than it asserted 25 years earlier, New Hampshire argued (quoting Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 369 (1946) that "ordinarily the doctrine of estoppel or that part of it which precludes inconsistent positions in judicial proceedings is not applied to states."

The Supreme Court agreed that there are instances where "broad interests of public policy may make it important to allow a change of positions that might seem inappropriate as a matter of merely private interests." (18 Wright § 4477, p. 784).  But, the Court held, estopping New Hampshire in this case would *not* compromise a law enforcement interest:   "[T]his is not a case where estoppel would compromise a governmental interest in enforcing the law". Id. At 755, *citing and quoting* Heckler v. Community Health Services of Crawford Cty., Inc., 467 U.S. 51, 60 (1984) ("When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.").

The Court also observed that the case at bar was *not* one where "the shift in the government's position is `the result of a change in public policy.'" Id. at 756  (quoting United States v. Owens, 54 F.3d 271, 275 (6th Cir.1995) and citing Commissioner v. Sunnen, 333 U.S. 591, 601 (1948) (collateral estoppel does not apply to Commissioner where pertinent statutory provisions or Treasury regulations have changed between the first and second proceeding).  Nor, said the Court, was the change in position "the result of a change in facts essential to the prior judgment".  Id. *citing* Montana v. United

States, 440 U.S. 147, 159 (1979) ("changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues").

The Supreme Court ruled that the only change "between 1976 and today is New Hampshire's interpretation of the historical evidence concerning the King's 1740 decree. New Hampshire advances its new interpretation not to enforce its own laws within its borders, but to adjust the border itself. Given Maine's countervailing interest in the location of the boundary, we are unable to discern any `broad interest of public policy,' 18 Wright § 4477, p. 784, that gives New Hampshire the prerogative to construe `Middle of the River' differently today than it did 25 years ago."

New Hampshire was thus not permitted to take a position inconsistent with the position it took years earlier.

Here, the shift in position by the government's agents is unprincipled, and designed merely to "adjust the border itself", so to speak. Even were the Receiver to have a basis to proceed further, he should be judicially estopped from taking an inconsistent position with the judicial admission of the attorney for the United States that the shares of Borderline NS were transferred to Sandi Eberhard.

The Second Case:

Your Honor also asked my input as to how the second case should proceed.

I am presently engaged in settlement negotiations with the three prosecutors on that case. We are looking for more documentation to arrive at a number. (We are looking forward to the Receiver's report also. He was ordered to file a report on the status and finances by August 8th.)

In the meantime, Mrs. Eberhard's "claim" in the forfeiture action was submitted by ECF. However, we would like additional

time to answer or move against the Complaint, pending discussions.

I will be asserting defenses to the claims, including (but not limited to) the defense that (1) the forfeiture complaint is untimely; statute, quoted by the government in the complaint, requires that a forfeiture proceeding be brought within a year; and (2) that the fraudulent conveyance action should be barred by the doctrine of laches and /or estoppel, and by the doctrine of "unclean hands" (in that the government seeks this property to pay "victims" entitled to restitution because Todd Eberhard and EIA stole money from their accounts, but the prosecutors never recognized Mrs. Eberhard as a victim, though Todd stole some three- or four-hundred-thousand dollars from her account). Moreover, Mrs. Eberhard is an "innocent owner" within the meaning of the law.

I will also be asking for a jury trial in both the forfeiture and fraudulent conveyance actions. We already discussed cases dealing with fraudulent conveyances in prior papers. With respect to forfeiture, the Seventh Amendment requires a jury trial. *See* C. J. Hendry Co. v. Moore, 318 U.S. 133, 153 (1943) ("We conclude that the common law as received in this country at the time of the adoption of the Constitution gave a remedy *in rem* in cases of forfeiture, and that it is a `common law remedy' and one which `the common law is competent to give' within the meaning of § 9 of the Judiciary Act of 1789."); United States v. One 1976 Mercedes Benz, 618 F.2d 453, 466 (7th Cir. 1980) ("The conclusion appears inescapable that both English and American practice prior to 1791 definitely recognized jury trial of in rem actions at common law as the established mode of determining the propriety of statutory forfeitures on land for breach of statutory prohibitions.")

We also plan to bring a third-party complaint against the Receiver for the monetary damages cause by his negligent management of the properties. As the Court was told, the Receiver has done little to nothing to actually manage the property, nor reported to this Court that he was unable to do so under the laws of Canada.

Though the Order appointing the Receiver purports to absolve the Receiver of liability for his negligence, a statute of the United States renders a Receiver suable for negligence. 28 U.S.C. § 959 ("Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.")  Mrs. Eberhard intends to pursue her remedy under the statute.

### Fees Should Be Awarded Under The EAJA

The Receiver objects to my application for fees under the EAJA.  Fees are entirely proper and appropriate, because the S.E.C. Receiver's position was without basis in law (and it continues to be).

There are two relevant statutes.  28 U.S.C. § 2412(b) provides: "(b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

Generally this section refers to conduct in litigation or outside litigation that can be deemed "bad faith". See Kerin v. USPS, 218 F.3d 185, 194 (2d Cir. 2000).  The Kerin Court noted: "It is sometimes possible to infer bad faith from[, for example,] the meritlessness of a motion." Id. at 192, *citing* Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 338 (2d Cir. 1999) ("Bad faith can be inferred when the actions taken are `so completely without merit as to require the conclusion that they must have been undertaken for

some improper purpose.'")

I respectfully suggest that the conduct of the Receiver was taken in "bad faith", if not before, with the purpose of keeping the property under his control, *regardless*.  The Receiver tried to (and did) persuade the Court that he ought to be able to sell the property based solely on a "preliminary injunction" standard.  The Receiver did not back off that position, though he should have after present counsel pointed out the serious flaws in such position.  Furthermore, the Receiver has taken no significant action to actually gain "control" of the Canadian properties, and did not bother to come to this Court for assistance or to follow, perhaps, some better course.

There is no "cap" on fees under § 2412(b).  <u>Kerin</u>, supra.

Section 2412(d), on the other hand, does not require "bad faith".  It provides that fees "shall" be awarded a "prevailing party" *unless* the position of the United States was "substantially justified."  Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought."  Under this provision, there is a "statutory cap" of $125 /hour, plus cost of living adjustments and adjustments for complexity and special expertise, as discussed below.

It is clear that Mrs. Eberhard was the "prevailing party" on the appeal (and should prevail against the Receiver here).  *See generally* <u>United States for Heydt v. Citizens State Bank</u> (8th Cir. 1982), 668 F2d 444, 82-1 USTC P 9147, 49 AFTR 2d 531 (8th Cir. 1982) (the term "prevailing party" in 28 USCS § 2412(b) is not limited to the "victor" only after entry of final judgment following a full trial on the merits; a party may be deemed prevailing if he or she obtains favorable settlement of case, if plaintiff has sought voluntary dismissal of groundless complaint, or even if party does not ultimately prevail on all issues.  Appellants there were "prevailing parties" where they successfully limited the scope of a summons.)

(Mrs. Ebehard also satisfies the statutory definition of "party" under 28 U.S.C. § 2412(d)(2)(B) to mean "an individual whose net worth did not exceed $ 2,000,000 at the time the civil action was filed).

It is clear that the position of the United States (acting through the S.E.C.'s Receiver) was not "substantially justified", either in this Court, or on the appeal.  The Receiver did not properly "receive" the Canadian property, nor asked this Court for further direction, nor simply dismissed the action when we showed it was improper. Therefore, attorney fees should be awarded to Mrs. Eberhard.  *See* Trichilo v. Secretary of Health & Human Services, 832 F.2d 743, 744-745 (2d Cir. 1987) (awarding fees under the EAJA to successful claimant and holding  -- in terms that are equally applicable here):

> Since the purpose of the EAJA is to remove counsel fees as an impediment to challenging unreasonable and unjustified governmental actions, where a governmental action has been shown to have been unjustified, there should be as little disincentive for plaintiffs to obtain attorney's fees as there is for them to challenge the action itself.
>
> …This reasoning applies equally to the time and effort expended by counsel on appeal. Indeed, this case provides a prime example of the reason why fees such as Trichilo's must be recoverable. He incurred fees of over $ 10,000 on appeal, when the amount in controversy on the original appeal was under $ 1,000. Were there no possibility of recovering the fees on appeal, counsel might well simply forgo the relatively small amount at issue and not contest the government's position on issues such as those raised by the appeal in this case, which, we note, the government lost.
>
> The government contends that it is unfair to subject the government to attorney's fee liability when, as here, the position it advocated on appeal -- as distinguished from the original, "substantially unjustified" position it

>adopted toward Trichilo that triggered this litigation -- was reasonable, although not ultimately persuasive. However, as we noted in our original opinion, Congress has made clear that it is inappropriate to examine separate parts of the litigation to determine whether the government's position in each phase was justified. Instead, as long as the government's underlying substantive position was not "substantially justified", the plaintiff is entitled to recover all reasonable attorney's fees incurred. Trichilo, 823 F.2d at 707-08. <u>If the government wishes to avoid such liability, it need only refrain from taking positions that are not "substantially justified". Plaintiffs such as Trichilo, on the other hand, are unable to avoid these fees, which are forced upon them by the government's unreasonable positions</u>.

(Emphasis added).

Under §2412(d), it is the government that bears the burden of showing that its position was 'substantially justified." To meet that burden, it must make a "strong showing" that its action was "justified to a degree that could satisfy a reasonable person." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565, (1988); <u>Environmental Def. Fund, Inc. v. Watt</u>, 722 F.2d 1081, 1085 (2d Cir. 1983); *see also* <u>Pierce</u>, 487 U.S. at 565 (the government's position must have a "reasonable basis both in law and fact").

The Receiver's position did not have a reasonable basis in law and fact. Mrs. Eberhard was stripped of her property, stripped of the income from it, and stripped even of *information* about the property, because the Receiver thought he could proceed on the basis of a "preliminary injunction" standard. That he continued this position as to Borderline NS, *even when* the Court Ordered that ownership was in dispute and had to be determined before the property could be kept in the receivership, is unreasonable.

Moreover, the Receiver failed to come up with any law that justified his conduct here. In the Court of Appeals, the Receiver was

asked to name *one case* where a Receiver was allowed to pursue a fraudulent conveyance action.  He could not identify any case.

Moreover, it is a clear tenet that the Seventh Amendment requires a jury trial.  Though a Receiver has broad powers, his position that he could take disputed property away from a claimant by summary proceedings, and without a jury, was and is baseless.  We cited a number of cases to the Court of Appeals, and the Receiver had nothing substantial to say in opposition.  Specifically, we cited the following:

- White v. Sparkill, 280 U.S. 500 (1930) (Reversing grant of injunction against Palisades Interstate Park Board of Commissioners' possession of land taken for public park purposes under statute challenged by plaintiff as unconstitutional, transferring case to "law side" because suit sounded in law (ejectment), and explaining: "Where an action is simply for the recovery and possession of specific real or personal property ... the action is one at law.  An action for the recovery or real property has always been of that class.  The right which ... plaintiff wishes to assert is his title to certain property, the remedy he wishes to obtain is its possession and enjoyment, and in a contest over the title both parties have a constitutional right to call for a jury.") Id. at 510-511 (emphasis added).

- Harrison, Trustee, v. Chamberlin, 271 U.S. 191 (1926) (where there is a substantial and adverse claim, even if it is fraudulent and voidable, a bankruptcy court is without jurisdiction to adjudicate claim in a summary proceeding.  Claim is of a substantial character where there is a contested matter of right involving some fair doubt and reasonable room for controversy in matters of law or fact).  No jurisdiction in bankruptcy court where adverse claim is substantial.

If the fair doubt concerns a fact issue, it is for a jury.

- In re Midtown Contracting Co., 243 F. 56 (2d Cir. 1917) (in case where property was taken by Board of Education claiming right under contract provision allowing Board to declare default, and Board took such property before debtor filed for bankruptcy, Trustee could not maintain summary proceeding to declare transfer void as to Trustee; since there was a fact question and legal question, plenary proceeding required where there is claim of adverse title to property of the bankrupt.  Summary proceeding permitted "where property is in the physical possession of a third party or of an agent of the bankrupt, or of an officer of a bankrupt corporation, who refuses to deliver it to the trustee in bankruptcy."  Trustee, "if he succeeds to the rights of the bankrupt, must do as the latter would have been compelled to do, and, if he have any claim to property or any right to recover upon any indebtedness alleged to be due from another person, he must, like every other litigant, institute his own separate and independent action in a court having jurisdiction of the subject matter, and have his claim regularly adjudicated in due course of law.")  Seventh Amendment is cited by Court as part of that due process of law.

- In re Joseph R. Marquette, 254 F. 419 (2d Cir. 1918) (where Trustee does not have title and possession, an adverse claim cannot be summarily determined.)

- Grupo Mexicano De Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999) (overly "expansive view of equity must be rejected" consistent with the principle that we have a "government of laws, not of men", and upholding "well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property".  Id. at 319.

Simply put, it was not "substantially justified" to take the position

that these Constitutional principles, dating back to the beginning of this Country, do not apply. And it was *plainly* wrong to persist in its position throughout the years of litigation here.

As to the amount of fees which "shall" be awarded when the government's position is not substantially justified in fact and law, the EAJA provides (28 U.S.C. § 2412(d)(2)(A)) (with emphasis added): "(A) `fees and other expenses' includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (*The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished*, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) *attorney fees shall not be awarded in excess of $ 125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.*)".

My fee for representing Mrs. Eberhard has been and is $400/hour. The statutory "cap" of $125 per hour can be and is exceeded if a court determines "that an increase in the cost of living [since 1996, when the current hourly cap was set] or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." See 28 U.S.C. § 2412(d)(2)(A)(ii).

As to cost of living, $125/hour was set in 1996. Things have changed a lot since then. ). I know that *paralegals* have been awarded higher fees. *See* Phoenix Four, Inc. v. Strategic Resources Corp. et al, 05 civ. 4837(HB), Opinion and Order filed 8/1/06, awarding fees for "Fensterstock Partners" at the rate of $600 and $475/hour for partners; $440 for a senior associate; $325 for a junior associate; $295 for a *first-year* associate; and $195 for a paralegal", acknowledging that while these rates are "on the hight side" they are "not excessive", especially in that Fensterstcok is "experienced" and

an "accomplished litigator".)

The $125/hour baseline fee in the EAJA probably doesn't cover Covington & Burling's paralegals either.

Further, I respectfully suggest that the there is a limited available of truly *qualified* attorneys who could have and would have litigated this case, especially on a deferred payment (not contingency) basis.  Mrs. Eberhard's counsel (that is, me) has almost three decades of experience, first as a Law Clerk to a judge of the Second Circuit Court of Appeals, then as an Assistant U.S. Attorney in the Eastern District of New York, conducting investigations and trials, and for the last two years (1981-82) as Chief of the Appeals Division.  For the last 23 years, I have had my own practice, and have pursued constitutional issues and defenses.

Counsel who preceded me as counsel to Mrs. Eberhard did not see the issues.  Former counsel allowed the Receiver's counsel to conflate "disgorgement" with "forfeiture", as is shown in the Letter of Covington & Burling to the Court, September 15, 2003, p.9 (discussing forfeiture law (in addition to disgorgement) in support of the request to take Mrs. Eberhard's property). Former counsel did not fight against the piecemeal litigation that occurred in this case, all under the Receiver's "preliminary injunction" standard.  Former counsel did not fight against summary proceedings, which were totally improper here based on *principles* that do not vanish merely because an equity court is involved in an S.E.C. enforcement action.

Counsel will submit time if and when the Court rules that a fee should be awarded.  The Court should award Mrs. Eberhard counsel fees of $400 because it is, in this context, reasonable. (*Cf.* July 18, 2008, *Law.com*, "Arizona Department to GOP:  Ken Starr Wants How Much?", discussing Ken Starr's billing rate of $910/hour, though the State of Arizona is paying him $335/hour, its "regular rate … for outside lawyers for complex appellate cases".  See also Atlantic Fish Spotters Ass'n v. Daley, 205 F.3d 488, 491 (1st Cir. 2000) (exception to statutory cap applies to attorneys having "some distinctive knowledge or specialized skill needful for the litigation in question"),

*discussed in* Kerin v. USPS, 218 F.3d 185, 191 (2d Cir. 2000) (lodestar could be less or more than $200, and could be even higher where, as here, the meritlessness of the Receiver's positions smack of "bad faith" within the meaning of 28 U.S.C. § 2412(b), which has no statutory cap; court also held that a court may award a cost of living adjustment to the cap under § 2412(d), as measured by the Consumer Price Index, *citing* 28 U.S.C. § 2412(d)(2)(A) and Harris v. Sullivan, 968 F.2d 263, 265 (2d Cir. 1992

Certainly present counsel's fee of $400 / hour is justified. *See* United States v. Brumer, 420 F. Supp. 2d 206, 212 (S.D.N.Y. 2005), upholding hourly fee of $550 for lawyer in a complicated criminal case, where lawyer had a good reputation but only *fourteen years* of criminal law experience.

## CONCLUSION

In sum, the Court should dismiss the Receiver and not allow him to pursue this matter any further.

It should grant an extension of time to move against the Complaint in the "second case", especially because of pending discussions. We need the Receiver's report to know what he believes the finances may be.

Finally, the Court should award counsel fees under the EAJA at a rate of $400 / hour, plus expenses and costs.

Very truly yours,

Vivian Shevitz

Cc:  Alan Vinegrad (by e-mail)
     Andrew Ruffino (by e-mail)
     Barbara Ward (by e-mail)
     Kathleen Zebrowski (by e-mail)
     Jeff Alberts (by e-mail)
     Irving Picard (by e-mail)